FLORENCE McDONALD ET AL. V. LAURA G. BOARDMAN AND J. H. KNAPP ET AL.

1. JOINDER OF A RESIDENT AND NON-RESIDENT DEFENDANTS, GIVES NO JURISDICTION WHEN NO JOINT LIABILITY IS SHOWN.

Jurisdiction over a non-resident defendant cannot be obtained by averring a joint liability with a resident of the county in which the suit is brought; and where the evidence showed that the plaintiff had no right to thus obtain jurisdiction over the person of such non-resident, the action should be dismissed.

2. PLEADINGS MAY BE CHANGED TO INTERPOSE DEFENSE OF IMPROPER JOINDER.

If such non-resident defendant has interposed a general denial, instead of pleading the improper joinder and service, he will be allowed, after the evidence is received, to interpose such an answer, and the case will be dismissed.

APPEAL from the Court of Common Pleas of Clermont county.

SMITH, J.

In this case we are of the opinion, that there should be a decree in favor of the defendants dismissing the petition of the plaintiffs. It is true that the said plaintiffs, at the request of some one, (it may be of Mr. Gardner, who is not a party to this case, but who denies that he had anything to do with it) together with Thaddeus Bunker, their great-uncle, executed and delivered to one Fuller a deed for the lot in question, which had been devised by Mrs. Bunker, the wife of Thaddeus, to him for his life, and upon his death to the plaintiffs in fee, in consideration of $1,350 as stated in the deed, but of which they never received any part, nor is there any claim that it was ever arranged between the parties that they were to receive any part thereof. What became of the whole of the $1,350 does not appear, but it was shown that $1,000 of it was paid to Mr. Bunker by the grantee, by a certificate of deposit given to him, or to Garder for him, and that this $1,000 was turned over by Gardner and Bunker to the defendant Knapp, who was the executor of the will of Mrs. Bunker. By the terms of the will, Knapp had no control of the lot in question, had no interest therein, and was charged with no duty concerning it. There was in his hands, as executor, about $2,000 in money or notes, after the payment of the debts of the testatrix and of certain legacies given to others, to the use and income of which Bunker was entitled as long as he lived, and the executrix also had the power, and it was his duty under the will, to use so much of the principal of said fund as might be needed for the support and maintenance of the old man. At the death of the husband, whatever of the personal estate remained after the payment of the debts of the testatrix and of the special legacies, was to be divided equally among the plaintiffs, who were grand-nieces of Mr. and Mrs. Bunker.

The claim made on behalf of the plaintiffs as to the manner in which this deed was obtained from them, was this: Mrs. McDonald testifies substantially, that after the death of Mrs. Bunker, the testatrix, that she was living at Norwalk, some distance from Oberlin, where Mr. B$nker and J. W. Gardner, a distant relative of his, and her cousin resided, and that she received a letter from Gardner, enclosing the deed in

question. which had been signed and acknowledged by Mr. Bunker as one of the grantors on the eighteenth day of March, 1892, in which letter he asked her to execute the deed and send it to the other plaintiff, Mrs. or Miss Gaston, for execution by her. That she did execute and acknowledge it on March 21, 1892, without reading it and without knowing anything of its contents, and then sent it to Miss Gaston to be executed by her. That she made no inquiry in regard to the matter, and had no knowledge of the character of the paper, which she had executed, until after the death of Bunker, perhaps in 1894. She also says that she had not at the time, or for years after, any knowledge of the provisions of the will, or that she had any knowledge that she had any interest in the lot until after the death of the husband.

The other plaintiff testified that she had received the deed in a letter from Miss McDonald in this form:

"Dear Cousin Laura:

"Sign your name on this paper and return to J. W. Gardner, Oberlin, Ohio.

"Your Cousin,<br>"FLORENCE A. McDONALD."

That thereupon she executed the deed before a notary public (March 22, 1892), and sent it to Gardner as directed. She also testified that she did not read it, and had no knowledge of its contents or that she had any interest in the estate until December 24, 1894, after the death of Bunker.

These statements as to the ignorance of the plaintiffs as of the character of the instrument and of its contents, and as to their having no knowledge of their interest in Mrs. Bunker's estate, are hard to credit. These young women were of full age, and evidently possessed at least of ordinary intelligence, and from other circumstances disclosed in evidence, must have had more knowledge as to these matter than they say they had. But whether this is so or not, it cannot in any way effect the validity of a deed which they executed and acknowledged in due form of law, and entrusted it to another person for delivery.

Nor is there anything disclosed to show any fraud in this transaction on the part of Knapp in the procuring of this deed, or any knowledge on his part that any fraud had been perpetrated upon them by any one. It is clear that he had no knowledge whatever of the deed until after it had been executed and delivered to the purchaser, and the payment of at least $1,000 by him. Indeed it is difficult to see a fraud on the part of any one. The plaintiffs were simply asked by some one to execute the deed, and did so in the exceedingly negligent and careless manner testified to. There is no pretense that any statement, false or otherwise, was made to induce them to do so. One of them says her cousin, Gardner, asked her to sign it, and she did so. He denies this explicitly. Evidently, however, he was acting for Bunker, after the deed was executed and returned to him at least, and, with Bunker, received for him, from the purchaser, $1,000, which was deposited in the bank for Bunker; what became of the $350 does not appear. But some days after this, Knapp, who lived at a distance from Oberlin, came on business of the estate, and, at the instance of Bunker and Gardner, took this $1 000 to invest for the benefit of Bunker, and loaned it on note and mortgage in the name of Bunker, the note running for three years. It is probable that Knapp may have supposed

that the money was the purchase price of this lot, though he says that he was never informed that such was the case. Bunker, some time before that, had wanted him to sell the land as executor, but he had consulted the probate judge of the county in regard to the matter, and had been informed by him that, as there was more than enough personal property to pay the debts, that he, as executor, had nothing to do with the lot, but that Bunker and the plaintiffs could join in its sale, and he so informed Bunker. And this was all he had to do with it.

A year or two after this $1,000 was invested by Knapp for Bunker, the latter removed to Clermont county. He met with an accident, and by reason thereof became almost helpless, and the income from his interest in his wife's estate was not sufficient for his comfortable support. He was living with a relative of his wife, Mrs. Boardman, and made with her a contract, that if he would pay her $925, she would support him during the remainder of his life. The money was to be invested by her in the purchase of a home. Knapp was advised of this, and Bunker requested him to collect the $1,000, but as it was not due, it could not be done. Some time after this, Knapp, at the request of Bunker, purchased the note for $950, sent him the money and the note and mortgage were transferred to him, and Bunker paid the money to Mrs. Boardman, who invested it· in the purchase of a home. The claim of the petition is that this was a fraudulent contract between Bunker and Mrs. Boardman and Knapp, to defraud plaintiffs. There is not a scintilla of evidence as to this. For all that appears the arrangement was a fair and reasonable one, without any knowledge on the part of Mrs. Boardman or Knapp that the plaintiffs had any claim to the money, and the additional claim of plaintiffs, that they can hold the lot of Mrs. Boardman into which the money was put, has no foundation. Indeed, it is difficult to see on the whole case how the plaintiffs have been substantially injured, even if they conveyed away their interest in the lot devised to them in the negligent and careless manner which they claim. The executor, Knapp, was authorized and required by the will to use any part of the principal of the $2,000 of personal property in his hands for the support and maintenance of Bunker, and the plaintiffs were only to have what remained after that. The payment to Mrs. Boardman was a reasonable one, and the result was that the $925 came out of their interest in the lot, instead of their interest in the personalty, all of which has been paid by them by Knapp, as executor.

The allegations of the petition as to fraud and conspiracy between Mrs. Boardman, and Knapp being wholly unsupported by the evidence, when this appears it is clear under the law, that the plaintiffs had no right to sue Knapp in this case and obtain jurisdiction of his person by serving him with process in another county than that in which he resides. If jurisdiction of a defendant could thus be obtained, by simply averring a joint liability with a resident of the county in which the suit is brought, it would result in great injury to the rights of the non-resident parties, and cannot be permitted. This clearly appears by the decision of the case of Dunn v. Hazlett, 4 Ohio St., 435. If therefore, there was any fraud on the part of Knapp in the original transaction, that claim, under the circumstances, cannot properly be adjudicated in this action in Clermont county.

It is claimed that Knapp cannot now avail himself of this defense because he did not plead the improper joinder and service, having interposed only a general denial. We think the other course is the proper

one, but the facts being conceded, we will allow such an answer now to be interposed, and on that being done, the petition of the plaintiffs will be dismissed.

SWING, J.

I agree with Judge Smith as to the judgment that should be entered in this case, on the ground that the evidence does not show any joint cause of action against Knapp and Mrs. Boardman, and that no separate judgment can be rendered in this county against Knapp. But I am convinced, from the evidence, that Knapp had full and complete knowledge that the money received from the sale of this property was the property of these plaintiffs, and not the property of old man Bunker, except that that he had a life estate in it. But the action should be against Knapp alone.

*Mr. Sewell* and *J. B. Swing*, for plaintiffs.

*Lutes & Lutes*, for Knapp.

*Col. West*, for Mrs. Boardman.

---

# CONSTRUCTION OF A WILL.

[Lake Circuit Court, February Term, 1899.]

Frazier and Marvin, JJ.

Judge Marvin of the Eighth Circuit sitting in place of Judge Burrows. Judge Laubie absent.

## MARJORIE WARNER ROTE v. EUGENE N. WARNER ET AL.

1. A BEQUEST CONSTRUED AS A DEMONSTRATIVE LEGACY.

The ruling idea of a bequest gave $10,000, payable: Twenty shares of stock, at $2,000; one thousand dollars in L. S. & M. S. Ry. Co., at par $1,000; $7,000 in money or in well secured notes, is the amount, and if the testator did not own the L. S. & M. S. stock, at his death, the same will be fully satisfied by the payment of $1,000 out of the residue held by the executors.

2. INCREASED LEGACIES INTENDED TO BE IN LIEU OF CHARGES PRECLUDE THE RIGHT TO STATUTORY COMMISSIONS.

Where provision in a will is made for executors, that in consideration of the legacies therein given no fees for administering the estate are to be paid them, said executors being beneficiaries under the will and receiving legacies largely in excess of what they would have received had he died intestate, they having voluntarily assumed the administration and received the legacies, are estopped from receiving any other compensation, and are not entitled to the statutory commissions.

3. BEQUEST BY CODICIL HELD NOT TO TAKE TRUST CHARACTER OF A DEVISE IN THE WILL.

Where a testator has willed his infant daughter a sum, in trust, a codicil bequeathing her "in addition to the sums provided for her in my will, $1,000 in money," the latter is a direct bequest, and not an addition to the trust fund, and should be paid to the child or her guardian.

APPEAL from the Court of Common Pleas of Lake county.

FRAZIER, J.

This appeal is an action to construe the will and codicil of Elbridge O. Warner, deceased. The cause was heard in the court of common pleas and appealed to this court. In the court of common pleas the will was construed in several particulars, and the parties acquiesced in that